Michael C. Ormsby
United States Attorney
Eastern District of Washington
Earl A. Hicks
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 10-CR-00114-WFN |
| vs. | United States' Motion To Limit Or Exclude Defense Of Entrapment |
| WAYDE LYNN KURT, | |
| Defendant. | |

Plaintiff, United States of America, by and through Michael C. Ormsby, United States Attorney for the Eastern District of Washington, and Earl A. Hicks, Assistant United States Attorney for the Eastern District of Washington, submits the following Motion To Limit Or Exclude Defense Of Entrapment.

FACTUAL BACKGROUND

The Defendant, Wade Lynn Kurt, was indicted on August 24, 2010. The indictment charged the Defendant with being a felon in possession of a firearm. The charge is based upon the Defendant possessing firearms belonging to the CI on August 21, 2010, which includes the transportation of these firearms in the Defendant's car to the CI's property where they both engaged in target shooting. The Defendant also brought two of his own firearms to the CI's property and also

United States' Motion To Limit Or Exclude Defense Of Entrapment - 1
P10811LC.EHA.wpd

target shot with these weapons. The target shooting was recorded on video and the conversations between the Defendant and the CI were tape recorded.

The United States expects the Defendant to raise the defense of entrapment based upon conversations with the Defendant's attorney. The Defendant's attorney has indicated to the United States that he has contacted two witnesses who are afraid to testify based upon their concern that former members of the Vanguard Kindred (VK) ( a violent White Supremacy group investigated by the FBI) will retaliate against them. The Defendant's attorney has indicated that both of these witnesses will testify regarding the Defendant's defense of entrapment. The Defendant's attorney has also indicated that the defense begins at a time when another member or associate of the VK was assaulted in the presence of the Defendant and CI.  Based upon the information provided by the Defendant's attorney the United States believes that this incident occurred in late March or early April of 2009.  The Defendant's attorney has asked the United States to consider closing the courtroom during these witnesses testimony or somehow changing their names so they can testify without fear of retaliation. The United States does not agree with the Defendant's requests.

Both the Defendant and the CI were members or associates of the VK during the 2009 time frame. Both the Defendant and the CI left the VK sometime during 2009 or 2010.  The Defendant appeared to have left the VK during the summer of 2009. There has been no indication by the Defendant that these witnesses have had any contact with the Defendant or the CI since they were in or associated with the VK.

The United States will present testimony at trial that the CI and the Defendant were targets of the FBI investigation involving the VK. It is further

United States' Motion To Limit Or Exclude Defense Of Entrapment - 2
P10811LC.EHA.wpd

expected that the evidence will show that the CI was not working as a confidential informant until the time he was signed up by the FBI on February 10, 2010. Prior to that date the CI was a private citizen who was being investigated for potential criminal conduct based upon his association with the VK.

The United States is filing this motion to limit the testimony that can be used at trial for the purpose of establishing the defense of entrapment. The United States submits that this will be a significant issue at trial and that it is appropriate to consider some of these matters pretrial based upon the law as it relates to entrapment. The United States also believes that this is a rare case where the Court should consider not allowing the Defendant to allow the defense of entrapment.

On July 22, 2010, the Confidential Informant (CI) met with the Defendant. The CI tape recorded the meeting. During this recorded conversation the Defendant indicates to the CI that:

    (A) he has bought a Lee Pro 1000 progressive loader. (Used to reload ammunition);

    (B) he has a Lee crimp die which he says will resize the casings;

    (C) he has watched reloading on Youtube;

    (D) he is going to get into casting bullets for target type shooting;

    (F) for the 762 (a firearm) he is contemplating subsonic rounds;

    (G) he is set up (to make ammunition) for his .38 special and will be for the 762 in a week or two.

United States' Motion To Limit Or Exclude Defense Of Entrapment - 3
P10811LC.EHA.wpd

(H) he has watched a lot of videos and looked on line researching suppressors and has gotten an 8mm barrel and can get another one. Indicates he will make two (suppressors) and give the CI one to use. (Pg. 9 Disc.);

(I) he found some Teflon that can be baked on bullets to make body armor piercing rounds (Pg. 10 Disc.)[1];

(J) says he can not be directly involved in anything with weapons (Pg. 11 Disc.);

(K) indicates the CI can help him with reloading; instructions on equipment are vague and it took awhile to learn, but once he got it it's another deal, a thousand rounds per day. (Pg. 12 Disc.);

(L) he has a Saiga (rifle Defendant brought to CI's property on 8/21/10); also talks about cheap ammo and armor piercing ammunition (Pg. 14 Disc.) and

(M) says "Let's silence one and make it work." Indicates that he's into tactical, quiet, or silent hits. (Pg. 14 Disc.).

During the July 22, 2010, meeting, the Defendant and CI agree to meet again. They also agreed to set up the meeting by the Defendant sending the CI a letter. The Defendant sent the CI a letter which indicated that he had just received the parts that he needed for reloading the Russian cartridge. The Defendant requested a meeting with the CI on Thursday, August 12 at 4:30 p. m. at Friendship Park in Spokane. Included with the letter was a map of how to get to

---

[1] The United States has provided in Attachment A relevant reports cited in this Motion.

United States' Motion To Limit Or Exclude Defense Of Entrapment - 4
P10811LC.EHA.wpd

1  Friendship Park. (Pgs. 15-17 Disc.). The CI met with the Defendant. The CI had a
2  recording device and tape-recorded the conversation between himself and the
3  Defendant. During this recorded conversation the Defendant indicates to the CI
4  that:
5      (A) he got the stuff and that he set it up last night; that he did 80
6      rounds of .38 special (type of ammunition);
7      (B) he watched a good tutorial on YouTube and that he
8      started switching it over to .762 x .39 (type of ammunition);
9      (C) he used a factory round to get the settings correct and that once
10     this was done they all look like factory rounds (referring to
11     ammunition); all of his rounds are going to be subsonic, under 1000
12     feet per second; (Pg. 19 Disc);
13     (D) he needs a good place for target practice. The CI
14     indicates he can go out to his cabin on 10 acres. The Defendant
15     indicates that sounds good and asks if anyone would call the cops;
16     (Pg. 21 Disc.);
17     (E) he wants to make his AK more versatile and says his is a Saiga
18     (type of firearm);
19     (F) suggests next weekend for shooting a meeting at the same
20     location at around 10:00 AM and driving in one car; the CI and the
21     Defendant discuss and decide to shoot on the 21st. (The target
22     shooting took place on August 21, 2010);
23     (G) He took a front end loader at his employer's and parked it inside
24     at night. He indicated the bucket was full of sand and he used this as a
25     backdrop to shoot his .38 special. The Defendant further indicated he
26
27 United States' Motion To Limit Or Exclude Defense Of Entrapment - 5
   P10811LC.EHA.wpd

purchased the gun after finding it in a publication like the Penny Press. He indicated there were a bunch of them on line and he watched until he found one at the right price. (Pg. 22 Disc.);

(H) He is going to go home and make some experimental rounds and maybe fire some off at his employer shop. The Defendant further indicates that his employer's place is super secure and he has the keys and codes; (Pg. 24 Disc.) and

(I) he agrees to meet with a confidential informant at the same spot next Saturday. The Defendant says they'll will put everything in the trunk and go. The Defendant indicates that if they pulled over it all belongs to the CI. "You are legal, I'm not." (In context this is a reference to firearms) (Pg.25 Disc.).

## GENERAL LAW OF ENTRAPMENT

The defense of entrapment has two elements: (1) the defendant was induced to commit the crime by a government agent, and (2) he was not otherwise predisposed to commit the crime. *United States v. Barry,* 814 F.2d 1400, 1401 (9th Cir.1987). The principle element in the defense of entrapment is the defendant's predisposition to commit a crime and its existence is generally a factual issue for the jury. *Matthews v. United States*, 485 U.S. 58, 63 (1988), *United States v. Schafer*, 625 F.3d 629, 637 (9th Cir. 2010).  To establish entrapment as a matter of law, the defendant must point to undisputed evidence making it patently clear that an otherwise innocent person was induced to commit the illegal act as a result of trickery, persuasion, or fraud of a government agent. *United States v. Tucker*, 133

United States' Motion To Limit Or Exclude Defense Of Entrapment - 6
P10811LC.EHA.wpd

F.3d 1208, 1217 (9th Cir. 1998). *See Jacobsen v. United States*, 503 U.S. 540, 553 (1992).

If the defendant is predisposed to commit the crime, then the entrapment defense is unavailable. *Matthews*, 485 U.S. at 63. *United States v. Russell*, 411 U.S. 423, 436, 93 S.Ct. 1637 (1973). In determining predisposition, five factors need consideration: (1) the character or reputation of the defendant; (2) whether the government made the initial suggestion of criminal activity; (3) whether the defendant engaged in the activity for profit; (4) whether the defendant showed any reluctance, and (5) the nature of the government's inducement. *United States v. Jones*, 231 F.3d 508, 518 (9th Cir. 2000). "Although none of these factors is controlling, the defendant's reluctance to engage in criminal activity is the most important." *United States v. Williams*, 547 F.3d 1187, 1198 (9th Cir. 2008) (citing *United States v. Busby*, 780 F.2d 804, 807 (9th Cir. 1986)). "Government initiation of illegal activity is one factor to be considered, but it is not determinative so long as the government only provides the defendant with an opportunity to commit a crime which he was already predisposed to commit." *United States v. Busby*, at 807." In *United States v. Scott*, 859 F.2d 792 (9th Cir. 1988), Sl. Op. 86-1366 (9th Cir., Oct. 19, 1988), *See e.g., United States v. Simas*, 937 F.2d 459, 462 (9th Cir. 1991) the Ninth Circuit found tape recorded conversations of the defendant helpful in determining whether there was outrageous government conduct or entrapment. In the case at bar, several tape recorded conversations are particularly illuminating on these issues.

United States' Motion To Limit Or Exclude Defense Of Entrapment - 7
P10811LC.EHA.wpd

## COURTS DISCRETION TO GIVE ENTRAPMENT INSTRUCTION

The District Court Judge must weigh the evidence presented by the defendant to determine whether an entrapment instruction should be submitted to the jury; however the burden on the defendant is slight. "[I]t is well established that 'a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.'" *United States v. Spentz*, __F.3d __, 2011 WL 3195708 *3 (9th Cir. 2011) (citing *Mathews v. United States,* 485 U.S. 58, 639 (1988)). "'Only slight evidence will create the factual issue necessary to get the defense to the jury, even though the evidence is weak, insufficient, inconsistent, or of doubtful credibility.'" *Id.* (citing *United States v. Becerra,* 992 F.2d 960, 963 (9th Cir.1993)).

> "While it can be slight, there still must be some evidence demonstrating the elements of the defense before an instruction must be given." *Spentz*, 2011 WL 3195708 *3. "The entrapment defense has two elements: '(1) the defendant was induced to commit the crime by a government agent, and (2) he was not otherwise predisposed to commit the crime.'" <u>*United States v. Barry,* 814 F.2d 1400, 1401 (9th Cir.1987)</u>**.** The Ninth Circuit has held that "[a] defendant is not entitled to have the issue of entrapment submitted to the jury in the absence of evidence showing some inducement by a government agent *and* a lack of predisposition by the defendant." *United States v. Rhodes,* 713 F.2d 463, 467 (9th Cir.1983); *see also United States v. Busby,* 780 F.2d 804, 806 (9th Cir.1986) ("The trial court will instruct on entrapment only if the defendant presents some evidence of both elements of the entrapment defense.").

The Ninth Circuit has also held that "[b]efore the issue of entrapment may reach the jury the trial judge must decide that there is a genuine issue of fact for the jury. *United States v. Hoyt*, 879 F.2d 505, 509 (9th Cir. 1989). "If the trial judge finds that the defendant has not presented sufficient evidence to show both inducement and lack of predisposition, the trial judge is obliged to deny the requested instruction." *Id.*; "Similarly, if the prosecution has rebutted a showing of

United States' Motion To Limit Or Exclude Defense Of Entrapment - 8
P10811LC.EHA.wpd

either inducement or a claim of lack of predisposition so that no rational jury could entertain a reasonable doubt as to either element, the trial judge's duty is to deny a request to give the entrapment instruction." *Id.* (citing *United States v. Glaeser,* 550 F.2d 483, 487 (9th Cir. 1977)).

There is no limitation on the entrapment defense for how far in the past a defendant may reach when raising the entrapment issue. That said, the defendant must show how the evidence from the past indicates that the government agent induced him to commit the crime charged in the instant case *and* that "he was not otherwise predisposed to commit the crime." *Barry,* 814 F.2d at 1401. The mere fact that the defendant and the confidential informant (CI) are friends, or have been friends is not a dispositive issue in the entrapment context. *See United States v. Mendoza-Prado*, 314 F.3d 1099, 1102 (9th Cir. 2002).  The Ninth Circuit is replete with cases in which the CI and the defendant were friends before the defendant's commission of the crime and the court held that there was no entrapment. *E.g.*, *United States v. Hoyt*, 879 F.2d 505, 506 (9th Cir. 1989). In *Hoyt*, the defendant and a woman named Katherine had known each other for three years before Katherine became a CI for the DEA. *Id.* at 507. The defendant indicated that he thought of Katherine as a sister. *Id.* Two months before Katherine became a CI, she asked the defendant to sell cocaine to one of her friends so she could raise enough money to move from her father's home who had been making sexual advances toward her. *Id.* After meeting with DEA agents, Katherine was instructed to arrange a meeting between the defendant and undercover DEA agents. *Id.* Eventually, the defendant was arrested by the DEA as he attempted to sell cocaine to the undercover agent. *Id.*

United States' Motion To Limit Or Exclude Defense Of Entrapment - 9
P10811LC.EHA.wpd

At trial, the defendant "attempted to present an entrapment defense . . . [and] argued that he had no predisposition to sell cocaine to [the DEA agent] but only agreed to do so after being induced to sell the cocaine by his friend Katherine who, unbeknownst to [him], was acting as a DEA informant and agent at the time. *Id.* at 506. The defendant's "only evidence consisted of his own testimony . . . [including] innocent explanations for incriminating evidence found at his home and in his safe deposit boxes. *Id.* " He described how Katherine had repeatedly asked him to sell cocaine so that she could use the money to move out of an allegedly uncomfortable situation at her father's house." *Id.* The trial judge refused to give the jury and entrapment instruction. *Id.* The Ninth Circuit upheld the district court's refusal to instruct on entrapment reasoning that "[g]iven the substantial and overwhelming evidence of Hoyt's ongoing involvement in drug trading, [the district court] did not abuse [its] discretion in refusing to give the requested jury instruction." *Id.* at 509-510. "Furthermore, no rational jury could have entertained a reasonable doubt as to Hoyt's predisposition to sell cocaine." *Id.* at 510.

Another example of when a defendant's friend becomes a CI and the defendant claims entrapment is *United States v. Mendoza-Prado*, 314 F.3d 1099 (9th Cir. 2002). In *Mendoza-Prado*, the Defendant met Donald Peralta (future CI) in 1994 when Peralta was hired on at the same janitorial company. 314 F.3d at 1101. The men became social friends when they were coworkers and "maintained a loose acquaintance after [the defendant] left his job at the janitorial firm." *Id.* In November 1996, FBI agents asked Peralta to renew his friendship with the Defendant because the Defendant's brother was the subject of an FBI investigation. *Id.*

United States' Motion To Limit Or Exclude Defense Of Entrapment - 10
P10811LC.EHA.wpd

Less than a year later, in August 1997, the FBI had the CI call the defendant and ask if he "knew anyone who could acquire cocaine for [the CI's] fictitious brother-in-law." *Id.* The defendant eventually indicated he could set up a deal for the CI and that it would be "very easy" to arrange. *Id.* Ultimately, the Defendant arranged two cocaine buys with the CI and FBI agents. In 2000 the defendant was found guilty on both of the indicted drug counts. *Id.*

At trial the defendant argued that he was entrapped and the judge gave an entrapment instruction to the jury. *Mendoza-Prado*, 314 F.3d at 1102. The defendant argued that "his friendship with [the CI] induced him to commit the crimes." *Id.* The court indicated that the CI "did not invoke his friendship as a way to convince Defendant to arrange the drug deals." *Id.* Furthermore, [t]he mere suggestion to commit a crime does not amount to inducement, *United States v. Simas,* 937 F.2d 459, 462 (9th Cir.1991), even if the suggestion is made by a friend. The court went on to hold; that "[e]ven if Peralta's friendship created a feeling of obligation in [the defendant] . . . the jury properly could have found that Defendant was predisposed to commit the crimes." *Id*. *See United States v. Thomas,* 134 F.3d 975, 978 (9th Cir.1998) (listing factors for courts to consider in deciding the issue of predisposition). It is the "defendant's reluctance to engage in criminal activity is the most important factor to consider in deciding the issue of predisposition." *Id.*

Weighing the facts in the case the court held that the:

[d]efendant showed no reluctance to commit the crimes. With very little inducement, he readily agreed to look for the cocaine sought by Peralta. He discussed the transactions several times, expressing no hesitation or change of heart. Additionally, Defendant's conversations demonstrated a prior familiarity with the drug trade. For example, when discussing an impending

United States' Motion To Limit Or Exclude Defense Of Entrapment - 11
P10811LC.EHA.wpd

>cocaine deal, Defendant remarked: "It's been years since I've seen anything as pretty as that damn stuff." Defendant knew about the price of cocaine in Europe and the process of cutting cocaine. And, although the government's agent made the initial suggestion for the specific transactions at issue, it was Defendant who first broached the general subject of drug trafficking and who subjected Peralta to various "tests" of trustworthiness, such as pointing a gun in Peralta's face to see how he handled fear and biting Peralta's finger and thumb to see how he handled pain. Finally, there is evidence suggesting that Defendant engaged in these narcotics transactions for profit.

*Mendoza-Prado*, 314 F.3d at 1102.

The court concluded that the issue of entrapment was properly left to the jury and that the jury correctly found that the defendant was not entrapped.

Both *Hoyt* and *Mendoza-Prado* exemplify the point that simply because the defendant and CI are friends, does not mean that the defendant was entrapped. In *Hoyt*, the defendant's professed feelings of a familial bond with the CI may have led a jury to believe that the CI induced the defendant to sell the cocaine. However, the overwhelming evidence that the defendant was involved in cocaine trafficking, regardless of the CI's inducement, meant that the defendant was predisposed to trafficking cocaine and therefore undeserving of an entrapment instruction. In *Mendoza-Prado*, the CI's request if the defendant knew where he could acquire cocaine was found not to be inducement because "[t]he mere suggestion to commit a crime does not amount to inducement . . . even if the suggestion is made by a friend. 314 F.3d at 1102. While there are no time limits a defendant is restricted to when presenting entrapment evidence, the defendant must still show how that decade-old evidence of friendship with the CI induced[2]

---

[2] Inducement "consists of an 'opportunity' *plus* something else—typically, excessive pressure by the government upon the defendant or the government's taking advantage of an alternative, non-criminal type of motive." *Spentz*, 2011 WL

the defendant to commit the crime in the instant case and that "he was not otherwise predisposed to commit the crime." *Barry,* 814 F.2d at 1401. In *Hoyt*, the defendant was friends with the CI four years before his trial. In *Mendoza-Prado*, the defendant was friends with the CI six years before his trial. The entrapment arguments were rejected in both cases.

## A CITIZEN CAN NOT ENTRAP A DEFENDANT

The Ninth Circuit has held, on at least three occasions, that "an approach to a defendant by a private citizen before he was cooperating with the government, [does] not constitute governmental solicitation or inducement for purposes of the entrapment defense. *United States v. Emmert*, 829 F.2d 805, 809 (citing *United States v. Brandon*, 633 F.2d 773, 778 n.5 (9th Cir. 1980). In short, "[i]nducement by a private party is not entrapment. *Emmert*, 829 F.2d at 808.

In *Emmert*, a CI working for the DEA approached Thomas Powell with an offer that if Powell arranged a deal with the CI's buyer, an undercover DEA agent, the CI would pay a $200,000 reward to Powell. *Emmert*, 829 F.2d at 806. Powell then enlisted the defendant, a college student in San Diego, to help set up the deal with the CI in exchange for half of the reward money. *Id.* After a few months of negotiating the defendant, along with a few others eventually met with the undercover agent to make the drug transaction. The defendant, along with Powell, were arrested and charged.

---

3195708 *3 (citing *United States v. Poehlman,* 217 F.3d 692, 701 (9th Cir.2000)).

At trial the defendant claimed entrapment on the theory that the CI used Powell as a conduit to pressure him to engage in drug trafficking. The defendant asserted that the CI had been heckling and threatening Powell to complete the drug deal with the undercover happen. The defendant then indicated that Powell relayed the CI's threats to him, thus inducing the defendant to engage in the drug trafficking. The trial court rejected the defendant's theory and refused to allow Powell to testify about the alleged threats the CI made. The Ninth Circuit upheld the district court's ruling because the CI did not pressure the defendant and Powell's reiteration of the threats is not entrapment since Powell was not a government agent. Furthermore, Powell's testimony was excluded because he "acted as a principal lawbreaker, and not as an agent of law enforcement, in inducing appellants to engage in the drug transaction. . . . [and] was himself a target of the undercover investigation, not a third party enlisted unwittingly or otherwise to "ensnare" the appellants. *Id.*

The Ninth Circuit in *Emmet* also relied on two other private-party entrapment cases to reach their conclusion, *United States v. Brandon*, 633 F.2d 773 and *United States v. Busby*, 780 F.2d 804 (9th Cir. 1986).

> In *Brandon,* Bracelin became acquainted with Yarbrough, a DEA agent who posed as an international drug dealer. After Bracelin refused Yarbrough's offer to enter into drug transactions, DEA agents arrested Bracelin and promised to recommend to the prosecutor to be lenient in exchange for a meeting with Brandon to consummate a drug transaction under electronic surveillance. This court summarily rejected the notion that the government entrapped Brandon through Bracelin before Bracelin's arrest. Bracelin had no knowledge that Yarbrough was a government agent before his arrest, and, as a private citizen, approaching Brandon at that time did not constitute government solicitation or inducement. *Id.* ….
>
> In *Busby,* Cowen had previously worked for state and federal government agencies as a paid informant. Unsupervised and undirected by the government, Cowen arranged a drug sale with

United States' Motion To Limit Or Exclude Defense Of Entrapment - 14
P10811LC.EHA.wpd

> Busby. After the terms of the sale were negotiated, Cowen contacted the police who provided an undercover agent to pose as Cowen's financial backer. We held that Cowen's previous status as a paid informant and his expectation that he would be paid for providing more information about the defendant in that case did not establish an agency relationship with the government. We concluded that, even though Cowen had an ongoing relationship with law enforcement agencies, that relationship was not sufficient to constitute an "agency" for conduct unsupervised by the police. 780 F.2d at 807. Thus, the initial negotiations between Cowen and Busby did not constitute entrapment. *Id.*

*Emmert*, 829 F.2d at 809.

Each of the above cases came to the same conclusion: a defendant cannot claim entrapment if the person whom he claims induced him into criminality was a private person. The Seventh Circuit said it best when dealing with a similar issue,

> There is no defense of private entrapment. *Busby*, 780 F.2d at 806-07. Private entrapment is just another term for criminal solicitation, and outside the narrow haven created by the defense of necessity or compulsion, the person who yields to the solicitation and commits the solicited crime is guilty of that crime. All crime is a yielding to temptation, the temptation to obtain whatever gains, pecuniary or non pecuniary, the crime offers. The temptation is a cause of the crime but not a cause that exonerates the tempted from criminal liability if he yields, just as poverty is not a defense to larceny. Cause and responsibility are not synonyms.

*United States v. Manzella,* 791 F. 2d1263, 1269 (7th Cir. 1986).

## ANALYSIS

The United States submits that the Court should not allow any testimony on the defense of entrapment which is alleged to have occurred prior to February 10, 2010 based upon the case law previously cited in this memo. The CI was a private citizen prior to that point and also was the target of an FBI investigation into the

United States' Motion To Limit Or Exclude Defense Of Entrapment - 15
P10811LC.EHA.wpd

illegal activities of the VK. The Ninth Circuit has held, on at least three occasions, that "an approach to a defendant by a private citizen before he was cooperating with the government, [does] not constitute governmental solicitation or inducement for purposes of the entrapment defense. In addition to the fact that the CI was a private citizen at the time that he and the CI were associated with the VK, there is no evidence known by the United States that indicates the CI had ever approached the Defendant with the idea of him possessing firearms.

The United States is not trying to exclude all evidence of the association of the Defendant and the CI prior to the time the CI worked for the government. There may be evidence which is admissible for other purposes. If there is any such evidence the United States will request a limiting instruction.

The United States believes that this is the rare case where a defendant should not be allowed to present an entrapment defense.  The defense of entrapment has two elements: (1) the defendant was induced to commit the crime by a government agent, and (2) he was not otherwise predisposed to commit the crime. In this case the Defendant is charged with being a felon in possession of a firearm. In order to prove this offense it is necessary for the United States to prove three elements. First, that the Defendant was a previously convicted felon. Secondly, the Defendant possessed the firearms alleged in the indictment. Thirdly, the firearms traveled in interstate commerce. An entrapment defense basically admits the commission of a crime by the defendant. Entrapment becomes a defense only when the defendant is not predisposed to commit the crime and he was induced to commit the crime by a government agent. In this case the evidence will show that the Defendant possessed two firearms and ammunition prior to his conversations with the CI. The evidence will also show that the Defendant was

United States' Motion To Limit Or Exclude Defense Of Entrapment - 16
P10811LC.EHA.wpd

making ammunition for the firearms that he already was in possession of. The evidence will also show that the Defendant knew his possession of firearms was illegal. The evidence will also show that it was the Defendant who transported the CI's firearms in his vehicle to the location where he and the CI were target shooting. During this target shooting the Defendant also possessed and fired the two illegal firearms which he had possessed prior to his meetings with the CI.

During the first recorded meeting the Defendant discussed using suppressors also known as silencers and being in possession of Teflon. The Defendant indicated that he would use the Teflon to make them armor piercing bullets. It was the Defendant who set up the second meeting by way of a letter. During that meeting the Defendant indicated that he was looking for a good place to shoot. The Defendant also indicated during this meeting that if they were pulled over it all belongs to you because your legal and I'm not in an obvious reference to the firearms. In context this is a clear indication that the Defendant was predisposed to commit this crime. There is no reasonable juror on earth who would believe that the Defendant was induced to possess these firearms. The Defendant had long been involved as a white supremacist who want to solve what he believed to be racial problems in the United States. The Defendant during the meetings with the CI discussed terrorist types of attacks against the citizens of the United States. The Defendant needed firearms to effectuate his escape or to commit other acts of terrorism. After all, it is in the Defendant who indicates that he's into tactical, quiet, silent hits.

## CONCLUSION

The United States respectfully submits, that based upon the above

United States' Motion To Limit Or Exclude Defense Of Entrapment - 17
P10811LC.EHA.wpd

memorandum, this Court should at a minimum limit testimony relating to the defense of entrapment to the time period when the CI was no longer a citizen but was working for the FBI . The United States further submits, that the Court should consider not allowing the Defendant to present the defense of entrapment at all .

DATED August 11, 2011.

                                Michael C. Ormsby
                                United States Attorney

                                s/ Earl A. Hicks

                                Earl A. Hicks
                                Assistant United States Attorney

I hereby certify that on August 11, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following, and/or I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant(s):

        Richard D. Wall
        Attorney at Law
        221 West Main Avenue, Suite 200
        Spokane, WA 99201

                                s/ Earl A. Hicks

                                Earl A. Hicks
                                Assistant United States Attorney